259 P.3d 274 (2011)
162 Wash.App. 254
OAK HARBOR EDUCATION ASSOCIATION, Appellant,
v.
OAK HARBOR SCHOOL DISTRICT, Respondent.
No. 64108-5-I.
Court of Appeals of Washington, Division 1.
May 9, 2011.
Publication Ordered July 5, 2011.
*275 James A. Gasper, Attorney at Law, Shelby A. Hopkins, Washington Education Association, Federal Way, WA, for Appellant.
Lawrence Bristol Ransom, Karr Tuttle Campbell, Seattle, WA, for Respondent.
SCHINDLER, J.
¶ 1 The Oak Harbor Education Association (the Union) sued the Oak Harbor School District (the District) to compel arbitration. On cross motions for summary judgment, the court granted the District's motion to dismiss the lawsuit. Because the agreement between the Union and the District clearly requires that "[a]ny question of arbitrability shall be decided by the arbitrator," we reverse and remand for entry of an order compelling arbitration.

FACTS
¶ 2 The Union represents certified teachers who work for Oak Harbor School District *276 # 201. The District and the Union entered into a collective bargaining agreement (CBA) under the Educational Employment Relations Act, chapter 41.59 RCW for a three-year period beginning September 1, 2005, "Negotiated Agreement Between Oak Harbor Education Association And Oak Harbor School District # 201."
¶ 3 James Pruss worked as a physical education teacher for the School District. In February 2007, a student accused Pruss of improperly touching her during basketball drills. The District initiated an investigation and reported the allegation to the police. On March 19, an attorney for the District interviewed Pruss. On the advice of his attorney, Pruss refused to answer questions. In late May, the State filed criminal charges against Pruss.
¶ 4 On May 24, School District Superintendent Rick Schulte sent a letter to Pruss stating there was probable cause to justify his discharge as required by the teacher discharge statute, RCW 28A.405.300. In the letter, Schulte listed three reasons justifying the probable cause determination: (1) that Pruss inappropriately touched a female student, (2) Pruss refused to answer questions during the investigation, and (3) Pruss allegedly attempted to threaten or intimidate a witness. The letter stated that if Pruss did not file a written request for a statutory hearing within 10 days, "it will be understood that you have accepted my decision."
¶ 5 On June 1, Pruss filed a request for a hearing under the teacher discharge statute. On June 14, the Union also timely filed a grievance on behalf of Pruss under the "Just Cause" provision of the CBA. The just cause provision of the CBA provides, in pertinent part:
No employee shall be warned, reprimanded or suspended, without pay, or discharged without just and sufficient cause. The specific grounds forming the basis of such disciplinary action will be made available to the employee and to the [Union] in writing.
¶ 6 The grievance asserted that the District's notice of discharge was contrary to the just cause provision under section 4.2 of the CBA and asked the District to rescind the notice of discharge. The CBA includes a five-step grievance procedure.[1] The final step of the grievance procedure is binding arbitration. "If a decision is not satisfactory to the grievant and the [Union], the [Union] may advance the grievance to arbitration."
¶ 7 On June 22, Schulte sent an e-mail to the Union representative agreeing to schedule a meeting but questioning whether Pruss's request for a statutory hearing precluded proceeding with the grievance under the CBA. The e-mail provides, in pertinent part:
I would be happy to have a meeting. . . . However, I want to make sure you are aware of the District's initial position regarding the grievance. We are not at all sure that Mr. Pruss is entitled to use the grievance procedure to challenge his termination, particularly in light of the fact that his WEA attorney, Jim Gasper, is working with the District's attorney to move ahead with the required statutory hearing process. I think the statutory process probably preempts the grievance process, and we do not intend to waive that position.
¶ 8 On June 22, a hearing officer scheduled the statutory hearing for August 20 and 21. At the time, the criminal trial was scheduled to begin the last week in July. On July 6, the District filed a motion for summary judgment. On July 23, Pruss filed his opposition to summary judgment.
¶ 9 Thereafter, the criminal trial was continued to September 13. On July 31, Pruss sent a letter to the hearing officer requesting a continuance of the statutory hearing until sometime later in October. In support of the continuance, Pruss's attorney stated that much of the evidence at the criminal trial would be relevant to the statutory hearing. The letter also stated that Pruss has the right to challenge the District's decision under either the teacher discharge statute or *277 the CBA "but not both." The attorney noted that the Union filed a grievance challenging his termination under the CBA, and a grievance meeting was scheduled with Schulte for August 24. The attorney asserted that a continuance was also necessary to allow Pruss the opportunity to pursue his grievance under the CBA. The letter states, in pertinent part:
Under contract, Mr. Pruss has the right to pursue either remedial avenue, but not both. However, the right to select would become pointless if this case goes forward before the pre-arbitral steps of the grievance process are exhausted. If the union later decides to pursue Mr. Pruss' grievance through arbitration, these proceedings would not go forward, but the statutory challenge would be withdrawn.
The District opposed a continuance of the statutory hearing scheduled for August 20 and 21.
¶ 10 On August 3, before the hearing officer ruled on whether to grant the motion to continue, Pruss withdrew in writing his request for the statutory hearing to challenge his termination, stating that he intended to continue to pursue his grievance under the CBA. The hearing officer entered an order of dismissal of the statutory hearing.
¶ 11 On August 7, Schulte sent a letter to the Union asserting that the District would not participate in the grievance procedure because the "grievance is not grievable" and Pruss had "elected to proceed under the required statutes, RCW 28A.405.300 and RCW 28A.405.310." The letter states, in pertinent part:
It is the District's position that the issue raised in Jim Pruss's June 15 grievance is not grievable, based not only on the express language of the grievance procedure in the collective bargaining agreement, but also on the fact that Mr. Pruss and the WEA (acting through WEA attorney Jim Gasper) clearly elected to proceed under the required statutes, RCW 28A.405.300 and RCW 28A.405.310. The fact that Mr. Pruss decided, while two important motions had been briefed and were pending before the agreed Hearing Officer, to withdraw his hearing request does not entitle him to switch his "election" of the manner in which he wishes to challenge his discharge to the grievance procedure of the collective bargaining agreement.
Accordingly, I am informing you that the Oak Harbor School District does not accept Jim Pruss's June 15, 2007 grievance as being subject to the grievance procedure. The District will not process the grievance any further, and I am therefore canceling the meeting with you that is currently scheduled for August 24, 2007.
In response, the Union sent an e-mail to Schulte on August 8 stating that the next step under the CBA required selection of an arbitrator to "determine whether or not this grievance is grievable." The District refused to proceed with the grievance.
¶ 12 On August 21, the Union filed a grievance against the District for violating the terms of the CBA by "denying Jim Pruss the right to utilize the grievance procedure and elect arbitration to challenge his termination." The Union sought "reaffirmation by the District that Article 9.0, including Section 9.7, affords any employee who has been terminated an election of remedies." The District rejected the grievance.[2]
¶ 13 On August 28, the State dismissed all criminal charges against Pruss with prejudice.
¶ 14 On September 6, the Union filed a lawsuit against the District to compel arbitration. The Union alleged that the District breached the terms of the CBA by refusing to participate in the grievance procedure and allow an arbitrator to determine whether Pruss's grievance was arbitrable. The Union asserted the CBA "provides that a teacher may elect to challenge adverse employment actions by the District under either statute or through the contractual dispute resolution procedure."
¶ 15 The District filed an answer and asserted a number of affirmative defenses including *278 election of remedies and waiver. In the answer, the District admits:
[A] teacher who is subject to the collective bargaining agreement between the District and the [Union] must use a statutory procedure to challenge certain employment actions and may under certain circumstances be able to elect to challenge certain employment actions either under a statutory process set forth in Chapter 28A.405 RCW or through the grievance procedure set forth in the collective bargaining agreement.
¶ 16 The parties filed cross motions for summary judgment. The District argued that as a matter of law, election of remedies, res judicata, waiver, and equitable estoppel barred Pruss from pursuing the grievance. The Union argued that under the terms of the CBA, arbitrability must be decided by an arbitrator. The Union asserted that under the CBA, the arbitrator determines whether election of remedies, res judicata, waiver, or equitable estoppel bars the grievance. The Union asked the court to enforce the CBA and compel arbitration.
¶ 17 The trial court ruled in favor of the District and dismissed the lawsuit to compel arbitration. The court ruled that the affirmative defense of election of remedies and waiver were "not based on the collective bargaining agreement, but rather on independent principles of law." The court's oral decision states, in pertinent part:
Accordingly, based on the doctrines of election of remedies and waiver, Oak Harbor Education Association [(OHEA)] is barred from pursuing its grievances under the collective bargaining agreement. The District's motion for summary judgment is granted and OHEA's motion for summary judgment is denied. OHEA's complaint is dismissed with prejudice. The Court will entertain orders consistent with the foregoing.
Because the Court has resolved this case based on the doctrines of election of remedies and waiver, the Court finds it unnecessary to reach the issues of priority of action, res judicata, and equitable estoppel, though these doctrines may also preclude OHEA from obtaining the relief it is seeking.[[3]]
The Union appeals.

ANALYSIS
¶ 18 The Union contends that under the terms of the CBA, the question of whether the grievance challenging Pruss's termination is subject to arbitration and whether election of remedies and waiver bars the grievance is for the arbitrator to decide. The District argues the court did not err in dismissing the Union's lawsuit to compel arbitration because election of remedies and waiver do not require interpretation of the CBA.[4]
¶ 19 Our review is de novo. Mount Adams Sch. Dist. v. Cook, 150 Wash.2d 716, 722, 81 P.3d 111 (2003). When reviewing summary judgment, we engage in the same inquiry as the trial court. Mount Adams, 150 Wash.2d at 722, 81 P.3d 111. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. CR 56(c).
¶ 20 Whether the dispute between the Union and the District is subject to arbitration is governed by the "Steelworkers' Trilogy." Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emp., 130 Wash.2d 401, 413-14, 924 P.2d 13 (1996). The Steelworkers' Trilogy consists of United Steelworkers of America v. American Manufacturing Co., 363 *279 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The rules set forth in the Steelworkers' Trilogy state a strong presumption of arbitrability:
(1) Although it is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute, the court cannot decide the merits of the controversy, but may determine only whether the grievant has made a claim which on its face is governed by the contract. (2) An order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. (3) There is a strong presumption in favor of arbitrability; all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication.
Council of County & City Emp. v. Spokane County, 32 Wash.App. 422, 424-25, 647 P.2d 1058 (1982). Accordingly, "'[a]part from matters that the parties specifically exclude, all of the questions on which the parties disagree must . . . come within the scope of the grievance and arbitration provisions of the collective [bargaining] agreement.'" Mount Adams, 150 Wash.2d at 724, 81 P.3d 111 (alterations in original) (quoting Warrior & Gulf Navigation, 363 U.S. at 581, 80 S.Ct. 1347; Peninsula Sch. Dist., 130 Wash.2d at 414, 924 P.2d 13).
¶ 21 The parties to a CBA can agree that an arbitrator shall decide the question of whether a dispute is arbitrable. Mount Adams, 150 Wash.2d at 724, 81 P.3d 111. Where, as here, a party to a collective bargaining agreement asserts that an arbitrator should determine if a dispute is arbitrable, the "proper judicial inquiry" is whether the parties have "`clearly and unmistakably provide[d]'" that the arbitrator should decide that question. Mount Adams, 150 Wash.2d at 724, 81 P.3d 111 (quoting AT& T Tech., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).
Where a party to a collective bargaining agreement claims the parties have agreed to allow an arbitrator to decide the issue of substantive arbitrability, the proper judicial inquiry is whether the parties have agreed that an arbitrator should decide that question. Bhd. of Teamsters [& Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.], 832 F.2d [507,] 510 [(9th Cir. 1987)]. When the parties agree by contract to vest an arbitrator with authority to interpret the parties' original intent, the parties are bound by their consent to have the arbitrator fashion an appropriate remedy. Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers, 150 Wash.2d 237, 248-49, 76 P.3d 248 (2003).
Mount Adams, 150 Wash.2d at 724, 81 P.3d 111.
¶ 22 In Mount Adams, the Union asserted the trial court did not have jurisdiction to determine the arbitrability of the grievance because the CBA required an arbitrator to decide arbitrability. Mount Adams, 150 Wash.2d at 723, 81 P.3d 111. The arbitration clause in that case provided that "`the merits of a grievance and the substantive and procedural arbitrability issues arising in connection with that grievance may be consolidated for hearing before an arbitrator.'" Mount Adams, 150 Wash.2d at 724-25, 81 P.3d 111. Because the Union and the parties "clearly and unmistakably agreed to allow an arbitrator to decide whether a grievance is arbitrable," the court held that while there was a question as to whether the teacher was covered by the CBA, the broad language of the arbitration clause in the CBA required an arbitrator to determine whether the teacher's grievance was arbitrable. Mount Adams, 150 Wash.2d at 724-25, 81 P.3d 111.
¶ 23 Here, as in Mount Adams, the District and the Union agreed that the arbitrator shall decide whether a grievance is arbitrable. Article 9.4 of the CBA provides, in pertinent part:

Any question of arbitrability shall be decided by the arbitrator. . . . The decision of the arbitrator shall be final and binding *280 on both parties in disputes concerning application or interpretation of a contract.[[5]]
Yakima County Law Enforcement Officers Guild v. Yakima County, 133 Wash.App. 281, 135 P.3d 558 (2006) also supports our conclusion that the question of whether Pruss's grievance is barred by election of remedies and waiver should be determined by the arbitrator. In Yakima, the Union filed a lawsuit to compel arbitration. The Union argued the County incorrectly interpreted and applied the just cause termination provision of the CBA. Yakima, 133 Wash.App. at 286, 135 P.3d 558. The County asserted the court should dismiss the lawsuit because the grievance was time barred. Yakima, 133 Wash.App. at 287, 135 P.3d 558. On appeal, we held that although the conflicting provisions of the CBA created ambiguity as to whether the dispute was arbitrable, based on the strong presumption favoring arbitration, any ambiguity had to be resolved by an arbitrator. Yakima, 133 Wash.App. at 286, 135 P.3d 558. Citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the court also held that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability"). Citing Moses, we concluded that the arbitrator should decide any "`allegation of waiver, delay, or a like defense to arbitrability.'" Yakima, 133 Wash.App. at 288, 135 P.3d 558; see Moses, 460 U.S. at 24-25, 103 S.Ct. 927.
¶ 24 Further, the determination of whether election of remedies or waiver bar the grievance requires interpretation of the CBA. Article 4.1 of the CBA provides:
Nothing contained herein shall be construed to deny or restrict to any employee such rights as he may have under applicable laws and regulations. The rights recognized hereunder shall not be exclusive but are in addition to those provided elsewhere.
Article 9.7 of the CBA also states, in pertinent part, that "[m]atters for which another method of review is required as the sole method of review shall be excluded from this grievance procedure."[6]
¶ 25 Because the Union and the District clearly agreed that "[a]ny question of arbitrability shall be decided by the arbitrator," we reverse and remand to enter an order compelling arbitration.
WE CONCUR: DWYER C.J., and ELLINGTON, J.
NOTES
[1] Under the CBA, "grievance" is defined in article 9.2 as "a claim that an existing contract term, school district regulation, rule, or policy has been misinterpreted, misapplied, violated, or applied inequitably as to a grievant."
[2] The Union filed a demand for arbitration on September 11. The parties stipulated to a stay of arbitration pending the outcome of this litigation.
[3] (Emphasis omitted.)
[4] The District also asserts that because compliance with the statutory requirements under RCW 28A.405.300 and .310 is mandatory, Pruss's decision to withdraw his request for a statutory hearing resulted in termination. Because the trial court did not address this argument below, we decline to do so. Snohomish Reg'l Drug Task Force v. 414 Newberg Rd., 151 Wash.App. 743, 758, 214 P.3d 928 (2009). Nonetheless, neither the language of the statute nor the CBA supports the District's contention that withdrawal of the request to proceed with the statutory appeal has any effect on the grievance process, and case law allows Pruss to challenge his termination under both the statute and the CBA. Civil Serv. Comm'n of City of Kelso v. City of Kelso, 137 Wash.2d 166, 171, 969 P.2d 474 (1999).
[5] (Emphasis added.)
[6] The District concedes that "if this issue were before an arbitrator, the parties would engage in an argument about the interpretation, meaning and enforceability of Article 9.7."